# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00834-SCT

*PEARSON'S FIREWORKS, INC.*

*v.*

*CITY OF HATTIESBURG, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/2013 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOSEPH H. MONTGOMERY |
| | LAWRENCE CARY GUNN, JR. |
| ATTORNEY FOR APPELLEE: | JAMES W. GLADDEN, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/07/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     This case arises from the City of Hattiesburg's ("the City's") annexation of property in 2007.  Pearson's Fireworks ("Pearson's") leased land which was part of the annexed property for the purpose of selling fireworks during the Fourth of July and New Year's holiday seasons.  Prior to the annexation, the City passed an ordinance prohibiting the sale of fireworks within the city limits.  After the annexation, the City notified Pearson's that it could no longer sell fireworks on the newly annexed land.  Pearson's then filed suit against the City in the Circuit Court of Lamar County.  The circuit court granted summary judgment

in favor of the City, and Pearson's now appeals the trial court's judgment to this Court. For the reasons discussed below, the trial court's judgment is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2.     The City enacted an ordinance prohibiting the sale of fireworks within its city limits in 1950. In 2003, Pearson's entered into a ten-year "Lease of Commercial Property" ("the lease") with MGM Partnership ("MGM"). The lease allowed Pearson's "to occupy the subject property between June 5th and July 15th for the 4th of July season and between December 1st and January 12th for the Christmas and New Year season of each year of the lease for the purpose of selling fireworks." At the time Pearson's and MGM entered into the lease, the property was not within Hattiesburg's city limits.

¶3.     In July 2006, MGM contacted the City to request that the City annex the property. The City adopted an ordinance to annex the property in September 2007. The Chancery Court of Lamar County then entered a judgment approving the annexation.

¶4.     After the property was annexed, the City prohibited Pearson's from selling fireworks on the property. In December 2008, Pearson's filed suit against the City, seeking three types of relief: (1) a declaratory judgment that Pearson's fireworks business could continue on the property pursuant to a "grandfathering" provision in the Hattiesburg Zoning Code and the doctrine of pre-existing use; (2) damages for the regulatory taking of Pearson's business; and (3) an injunction preventing the City from prohibiting Pearson's from selling fireworks until a decision on the first two forms of relief was reached.

¶5.     In March 2009, Pearson's filed a motion for declaratory judgment. The motion related only to Pearson's first form of relief sought in its complaint. *See Pearson's Fireworks, Inc.*

*v. City of Hattiesburg*, 66 So. 3d 1276, 1278 (Miss. Ct. App. 2011). In January 2010, the trial court denied Pearson's motion for declaratory judgment and granted the City's *ore tenus* motion for summary judgment. Pearson's appealed, and the case was assigned to the Court of Appeals. *See id.* The Court of Appeals found that the trial court did not address Pearson's regulatory takings claim (its second form of relief sought). *Id.* at 1278. Because all of Pearson's claims were not adjudicated, the Court of Appeals dismissed Pearson's appeal for lack of jurisdiction. *Id.*

¶6. When the case returned to the circuit court, the City filed a motion for summary judgment relating to Pearson's regulatory taking claim. Finding that a regulatory taking did not occur in today's case, the trial court entered summary judgment in favor of the City. Pearson's now appeals the trial court's judgment to this Court and raises four issues on appeal: (1) Whether the City's annexation ordinance is invalid due to lack of notice of publication; (2) Whether enaction of an annexation ordinance requires actual notice be given to known or easily identifiable property owners; (3) Whether the grandfathering provision in the City's Zoning Code and/or the pre-existing-use doctrine overrides the City's fireworks ordinance; and (4) Whether the City's prohibiting Pearson's from selling fireworks is a compensable regulatory taking.

## ANALYSIS

I.     **Whether the City's annexation ordinance is invalid due to lack of notice publication.**

¶7. The annexation process is governed by statute. First, if a city desires to annex property, "the governing authorities of such municipality shall pass an ordinance defining

3

with certainty the territory proposed to be included in or excluded from the corporate limits, and also defining the entire boundary as changed." Miss. Code Ann. § 21-1-27 (Rev. 2007). After the ordinance is passed, the city must "file a petition in the chancery court of the county in which such municipality is located . . . . The petition shall recite the fact of the adoption of such ordinance and shall pray that the enlargement . . . of the municipal boundaries . . . shall be ratified, approved and confirmed by the court." Miss. Code Ann. § 21-1-29 (Rev. 2007). When the petition is filed, the chancellor sets a hearing date, and notice of the hearing must be provided. Miss. Code Ann. § 21-1-31 (Rev. 2007) ("notice thereof shall be given in the same manner and for the same length of time as is provided in Section 21-1-15"). Mississippi Code Section 21-1-15 requires that the notice be published three times:

> said notice shall be given by publication thereof in some newspaper published or having general circulation in the territory proposed to be incorporated once each week for three consecutive weeks, and by posting a copy of such notice in three or more public places in such territory. The first publication of such notice and the posted notice shall be made at least thirty days prior to the day fixed for the hearing of said petition, and such notice shall contain a full description of the territory proposed to be incorporated.

Miss. Code Ann. § 21-1-15 (Rev. 2007).

¶8.     Pearson's concedes that the City complied with the above-described annexation procedure. Rather than claiming that the City did not comply with the statutory annexation procedures set forth in Sections 21-1-27 to -41, Pearson's argument is that the City did not comply with the notice requirements of Mississippi Code Section 21-13-11 (Rev. 2007), which requires municipalities to publish one notice of passed ordinances. Section 21-13-11 reads, in part:

4

Every ordinance passed by the governing body of a municipality, except as is otherwise provided by law, shall be certified by a municipal clerk, signed by the mayor or a majority of all the members of the governing body, recorded in the ordinance book, and published at least one (1) time in some newspaper published in such municipality, or, if there be no such newspaper, then in a newspaper within the county having general circulation in said municipality, or, if there be no newspaper published in or having general circulation in same, then in any newspaper published in the State of Mississippi having general circulation in said county; and all of same shall be done before such ordinance shall be effective.

Pearson's claims that, under Sections 21-13-11 and 21-1-15, the City should have published notice of the annexation ordinance a total of four times (once under Section 21-13-11, and three times pursuant to Section 21-1-15). The trial court in today's case found that only Section 21-1-15 applied, and, because the City complied with that section, Pearson's argument had no merit.

¶9. The City responds to Pearson's argument by claiming that the Code sections applicable to annexation ordinances – namely, Mississippi Code Sections 21-1-27 to -41 – are exclusive of Section 21-13-11. The City claims Section 21-13-11 is applicable only to general ordinances, not annexation ordinances. In support of its contention, the City points out that the statutes governing annexations do not explicitly state that notice must be published under Section 21-13-11; rather, the annexation statutes state that notice must be provided in accordance with Section 21-1-15.

¶10. The City also cites *City of Biloxi v. Cawley*, 278 So. 2d 389 (Miss. 1973), for the proposition that annexation ordinances are not subject to the notice requirements of Section 21-13-11. The issue in *Cawley* was whether an annexation ordinance had been properly adopted when the minutes of the city commission were signed by the mayor and clerk within

5

ten days after the adjourned regular meeting at which the ordinance was adopted. Although *Cawley* does not directly address whether notice under Section 21-13-11 – in addition to notice under Section 21-1-15 – must be provided in annexation cases, language in the opinion is helpful in determining whether the general ordinance statutes must be complied with during annexation proceedings. This Court stated: "Annexation ordinances have been placed in a special category by the Legislature and dealt with separately. These special statutes control over statutes dealing with municipal ordinances generally." *Id.* at 393.

¶11. Recently, in *Extension of Boundaries of City of Tupelo v. City of Tupelo*, 94 So. 3d 256, 262 (Miss. 2012) ("*City of Tupelo*"), this Court discussed the notice provisions for annexation matters. Although the notice provision of Section 21-13-11 was not at issue in that case, this Court did not include Section 21-13-11 in its notice discussion:

> Section 21-1-31 sets forth the notice requirements in annexation matters . . . . Section 21-1-15, which is incorporated by reference in Section 21-1-31, requires notice to be given both by publication in "some newspaper published or having general circulation in the territory proposed to be [annexed]" as well as by posting "a copy of such notice in three or more public places in such territory[;] [t]he first publication of such notice and the posted notice shall be made at least thirty days prior to the day fixed for the hearing of said petition."

*Id.*

¶12. The proposition that annexation ordinances are governed by Chapter 1 of Section 21, rather than Section 21-13-11, is further supported by a Mississippi Attorney General opinion. That opinion states:

> In the event that the governing authorities of a municipality desire to expand the boundaries of the municipality, the statutory procedures for annexation as provided by Miss. Code Ann. Secs. 21-1-27, et seq. must be followed. [The municipality] has proceeded with a proposed annexation of additional territory

6

to the point of publication of the notice of proposed enlargement as required by Section 21-1-31.

Fernald, 97 Op. Att'y Gen. 523, 1997 WL 612488 (Miss. A.G.) (Sept. 26, 1997). Notably, the opinion does not state that a municipality also must comply with the notice requirements of Section 21-13-11.

¶13. Because the statutes specifically governing annexation procedures require only three publications of notice and do not incorporate the notice provisions set out in Section 21-13-11, which applies to general municipal ordinances, the City in today's case provided adequate notice. This issue is without merit.

**II.    Whether actual notice, rather than constructive notice, of annexation matters should be given to known or easily identifiable property owners.**

¶14. Pearson's claims that the current notice provisions in the annexation statutes – which allow for constructive notice through the publication procedures discussed above in Section I – are unconstitutional and that actual notice of the annexation must be given to known or easily identifiable property owners. In support of its contention, Pearson's claims in its brief that "[d]ue process requires that actual notice be given to persons whose legal interests can be affected by governmental taking, if the identity of those persons is known and if there is an effective alternative to notice publication."

¶15. Pearson's cites *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708, 164 L .Ed. 2d 415 (2006), in support of its contention that actual notice is required in order to comply with due-process requirements. In *Jones*, the State of Arkansas took Jones's home for property tax delinquency and sold it to a private buyer. The State attempted to notify Jones of the tax delinquency and his right of redemption by mailing a certified letter to him. *Id.* at 223-24,

126 S. Ct. 1708. Because Jones no longer occupied the home, the certified letter went unclaimed and was returned to the State as undeliverable. *Id.* Even though the State knew Jones did not receive the notice, it arranged for the private sale. *Id.* Jones then filed suit alleging the State's attempted notice was insufficient under the Due Process Clause. *Id.* at 224, 126 S. Ct. 1708. The Supreme Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225, 126 S. Ct. 1708.

¶16. Pearson's also cites *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1998), for the proposition that the annexation procedure under Sections 21-1-13 to -41 is unconstitutional. In *Pope*, the United States Supreme Court addressed the constitutionality of an Oklahoma statute which required the probate court to appoint an executor or executrix after admitting a will to probate. *Id.* at 481, 108 S. Ct. 1340. After appointment, the executor or executrix was required to publish notice advising creditors to present claims within two months after the date of first publication. *Id.* If the decedent died intestate, creditors were given one month to present claims. *Id.* In *Pope*, a hospital failed to file its claim within the time period specified. *Id.* at 482, 108 S. Ct. 1340. The hospital then claimed that the statute did not provide proper notice to known creditors and, as such, violated the hospital's due-process rights. *Id.* at 483, 108 S. Ct. 1340. The Supreme Court agreed and held: "due process is directly implicated and actual notice [to known or reasonably ascertainable creditors] generally is required." *Id.* at 487, 108 S. Ct. 1340.

8

¶17. Pearson's points out that, shortly after *Pope*, the Mississippi Legislature amended its statute governing the identification of claims against an estate to provide for notice by mail to known creditors. *See* Miss. Code Ann. § 91-7-145 (Rev. 2013); *see also* **Estate of Petrick v. Miss. Neurosurgery, P.A.**, 635 So. 2d 1389, 1393 (Miss. 1994) ("The Mississippi statute, enacted shortly after *Pope*, clearly requires an administratrix to give creditors who can be discovered through reasonably diligent efforts notice by mail and notice by publication."). The statute also requires the executor or administrator to "make reasonably diligent efforts to identify persons having claims against the estate." **Id.**

¶18. Pearson's claims that "[b]y analogy the same principle should apply to Mississippi's annexation procedures. All persons whose businesses may be affected by annexation of property ought to be given actual notice of the pendency of annexation proceedings. Mere publication is not constitutionally sufficient."

¶19. In today's case, the owner of the land (the party typically concerned with notice of an annexation) contacted the City and requested the annexation. Even though this annexation was considered a "friendly annexation," the City followed the notice procedures prescribed in Section 21-1-15. Put simply, the landowner had notice of the annexation, and any due-process concerns were resolved through the City's compliance with the statutory procedures. Further, Pearson's contention leads to a far-reaching, and seemingly impossible, application. If all persons who have a business interest – or in essence, an economic interest – that may be affected by annexation proceedings are due actual notice of the proceedings, how does the municipality determine the scope of persons who have may an interest?

9

¶20.    Because the cases Pearson's cites in its brief are limited to individuals or definable groups requiring notice – rather than imprecise groups – the cases are distinguishable from today's case. *Jones* involved the sale of a known individual's real property to satisfy a tax lien. *Jones*, 547 U.S. at 223-24, 126 S. Ct. 1708.   The state sold Jones's home despite knowing that Jones did not receive the mailed notice. *Id.*  The Supreme Court focused on the State not taking further actions to effect notice when the mailed notices were returned and held that, under these facts, the state should have taken further action to notify Jones. *Id.* at 225, 126 S. Ct. 1708.  *Pope* also limited its application to known or reasonably ascertainable creditors.  *Pope*, 485 U.S. at 487, 108 S. Ct. 1340.  Further, in addition to their narrow holdings, *Jones* and *Pope* have not been applied to annexation cases such as this one.

¶21.    Although this Court has not directly addressed whether Section 21-1-15 is unconstitutional for failure to give actual notice to persons whose economic interests are affected by an annexation, this Court has held that personal service under the annexation statutes is not required.  In *Myrick v. Stringer*, 336 So. 2d 209, 210 (Miss. 1976), this Court held that the notice provision in Section 21-1-15 "is in lieu of personal service" and must be strictly complied with.  *See also* *City of Tupelo*, 94 So. 3d at 262 ("The notice required by Section 21-1-15 is in lieu of personal service and must be strictly complied with.").

¶22.    Because requiring actual notice to all persons who have some economic interest in annexation proceedings is almost limitless in its application, and because this Court has held that the notice provisions contained in the statutes at issue are in lieu of personal service, this issue is without merit.

10

**III.   Whether the grandfathering provision in the City's zoning code and/or the pre-existing-use doctrine overrides the City's fireworks ordinance.**

¶23.   Next, Pearson's contends that the grandfathering provision in the City's zoning code and/or the pre-existing-use doctrine override the City's zoning provision prohibiting the sale of fireworks.

¶24.   The City's zoning code contains the following provision: "12.03.  The lawful use of land existing at the time of the passage of this Code, although such does not conform to the provisions herein, may be continued . . . ."  Because selling fireworks was lawful on the subject land prior to the annexation, Pearson's claims that, under the grandfathering provision, fireworks sales may lawfully continue after the annexation. Likewise, Pearson's claims that the pre-existing-use doctrine allows for the continuation of fireworks sales after the annexation.  Under this doctrine "[n]on-conforming uses may be permitted to continue where the uses were lawfully established at the adoption of the ordinance." *Barrett v. Hinds County*, 545 So. 2d 734, 737 (Miss. 1989).  Further, "the right to continue a non-conforming use, once established and not abandoned, runs with the land.  It has been held by some courts that any ordinance which takes away that right in any unreasonable manner, or in a reason not grounded in public welfare is invalid." *Id.* (citations omitted).

¶25.   In *Davidson v. City of Clinton*, 826 F. 2d 1430, 1434 (5th Cir. 1987) (applying Mississippi law), the Fifth Circuit found that the doctrine of nonconforming (or pre-existing) use did not apply when the City of Clinton – which prohibited alcohol sales in certain areas – annexed land on which the plaintiff operated a nightclub that sold beer.  After the annexation, the plaintiff filed suit against the City of Clinton, claiming, in part, that he should

11

be able to sell beer lawfully at the nightclub under the pre-existing-use doctrine. *Id.* The Court found that this doctrine did not apply to the case because the ordinance prohibiting the sale of alcohol was a "reasonable and appropriate exercise of governmental authority" under the City of Clinton's police power. *Id.* at 1435.

¶26. In 2000, the United States District Court for the Northern District of Mississippi addressed whether the pre-existing-use doctrine could apply to fireworks sales on newly annexed property. *Meramec Specialty Co. v. City of Southaven*, 2000 WL 33907912 (N.D. Miss. Feb. 22, 2000) ("*Meramec I*"); *Meramec Specialty Co. v. City of Southaven*, 234 F. 3d 29 (5th Cir. 2000) ("*Meramec II*") (unpublished opinion) (affirming *Meramec I*). In *Meramec*, the plaintiff leased land for the limited purpose of selling fireworks. *Meramec I*, 2000 WL 33907912, at *1. The lease began in 1989, and in 1997, the City of Southaven annexed the land. *Id.* Southaven prohibited the sale of fireworks within its corporate limits except by special permit. *Id.* The Court found that the pre-existing-use doctrine did not apply to fireworks sales on newly annexed property. *Id.* at *2. Citing *Davidson*, the Court stated: "a municipal ordinance in existence at the time of annexation operates throughout the city's boundaries regardless of their change, and the jurisdiction of the new authority attaches and that of the former authority ceases upon annexation." *Id.*

¶27. The Mississippi Attorney General's Office has addressed the same issue. In 1998, the Attorney General issued an opinion addressing the following question:

> The City of Southaven has recently annexed an area in which fireworks stands have previously been located. The City of Southaven has a ban on possession and sale of fireworks. . . . [A]re these locations and their operations "grandfathered" due to their existence before the annexation?

12

Davis, 98 Op. Att'y Gen. 224, 1998 WL 224309 (Miss. A.G.) (April 24, 1998). The opinion cites Mississippi Code Section 21-19-15 (Rev. 2007), which "gives municipalities the authority to prohibit or regulate the sale or use of fireworks as a police power of the city." *Id.* Further, the opinion stated: "A municipality may enforce an ordinance prohibiting the sale and possession of fireworks in a recently annexed area and may prohibit the sale of fireworks by businesses which sold fireworks before the area was annexed." *Id.* Section 21-19-15 reads, in part:

> (1) The governing authority of municipalities shall have power to make all needful police regulations necessary for the preservation of good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property.
>
> . . .
>
> (3) The governing authority of a municipality shall have the power to prohibit or regulate the sale or use of firecrackers, roman candles, torpedoes, sky rockets, and any and all explosives commonly known and referred to as fireworks . . . .

Miss. Code Ann. § 21-19-15 (Rev. 2007).

¶28. Because the regulation of fireworks sales is considered a police power under Section 21-19-15 and the pre-existing-use doctrine and/or grandfathering is not applicable to ordinances relating to such police powers, this issue is without merit.

**IV.    Whether the annexation amounted to a compensable regulatory taking of Pearson's business.**

¶29. As an alternative to the issues discussed above, Pearson's requests that this Court find that the annexation in today's case resulted in a compensable regulatory taking of Pearson's business.

13

¶30. Article 3, Section 17 of the Mississippi Constitution prohibits the State's taking of property without compensation:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and as such, determined without regard to legislative assertion that the use is public.

¶31. As mentioned above, Mississippi Code Section 21-19-15 allows municipalities to regulate the sale and use of fireworks as part of their police powers. When considering takings claims and the exercise of police powers, this Court has held that "[r]estrictions imposed upon the use of property through the lawful exercise of the police power of the state do not require compensation." *Miss. State Highway Comm'n v. Roberts Enters., Inc.*, 304 So. 2d 637, 639 (Miss. 1974).

¶32. The Fifth Circuit in *Meramec II*, 234 F.3d at 29, found that a fireworks business owner was not entitled to compensation for an alleged taking under facts similar to today's case:

> Meramec now claims that it is entitled to just compensation for the taking of its alleged property rights. Since a license to sell fireworks is simply a revocable permit or alienable privilege, Meramec does not have a vested property right, and thus does not have a takings claim. Therefore, Meramec's just compensation claim is without merit.

¶33. Other courts have considered the same issue and found that, in the case of annexation, a business owner selling fireworks is not entitled to compensation. *See Dan Rhodes Enters., Inc. v. City of Lake Charles*, 857 So. 2d 1256, 1261 (La. Ct. App. 2003) ("While [a business owner] has the right to acquire, own, control, use, enjoy, protect, and dispose of private

14

property, this right is subject to reasonable statutory restrictions and the reasonable exercise of police power. To conclude otherwise would have a chilling effect on any proposed municipal annexation."). Like the Louisiana court in *Rhodes Enterprises*, Mississippi courts have recognized that municipalities may regulate the use of land within their territory through their police powers so long as the regulation is reasonable and not oppressive. *See Fanning v. Town of Hickory*, 30 So. 2d 65, 65 (Miss. 1947) (finding that ordinance prohibiting the sale of alcohol within 1,500 feet of a church was reasonable); *Ford v. Easterling*, 183 Miss. 575, 184 So. 153, 158 (1938).

¶34. In *Davidson*, 826 F.2d at 1435, the Fifth Circuit expressed concern that permitting the plaintiff to continue alcohol sales on a property that recently had been annexed into an area that prohibited the same would "alter practices of previously existing businesses, notwithstanding annexation" and possibly "numb the potency . . . of the defendants' exertion of its police power over the sale of beer and alcoholic beverages." Those same concerns are present when considering Pearson's takings claim. If Pearson's is entitled to compensation for the alleged regulatory taking in today's case, it would open the door for other businesses – in any case, annexation or not – to assert a takings claim when the business is subject to a prohibition in a newly enacted ordinance.

¶35. For these reasons, Pearson's takings claim is without merit.

## CONCLUSION

¶36. For the reasons discussed above, Pearson's contentions of error are without merit. Therefore, we affirm the judgment of the Circuit Court of Lamar County granting summary judgment in favor of the City of Hattiesburg.

15

¶37.   **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.**